UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TANYA J. PACE,

        Plaintiff,

    v.

WELLS FARGO BANK, N.A., *et al.*,

        Defendants.

Civil Action No. 19-1706 (CKK)

## **MEMORANDUM OPINION**

Plaintiff, proceeding *pro se*, filed her complaint in the Superior Court of the District of Columbia on May 2, 2019. The action was removed to this federal district court on June 12, 2019. Defendants Wells Fargo Bank, N.A. and Specialized Loan Servicing, LLC have filed motions to dismiss the complaint (ECF Nos. 7 & 14), and for the reasons discussed below, the Court will grant both motions.[1]

## **I. BACKGROUND**

### **A. Fee Simple Deed and 2000 Deed of Trust**

On June 20, 2000, Nations Credit conveyed real property located at 3328 Clay Street, N.E., Washington, DC 20019 ("the property") in fee simple to plaintiff as sole owner. *See*

---

[1] The Court considered the following submissions and their exhibits/attachments:
- Complaint to Quiet Title (ECF No. 1-1, "Compl.")
- Wells Fargo Bank, N.A.'s Motion to Dismiss Complaint (ECF No. 7, "WF Mem.")
- Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 16, "Opp'n to WF Mot.")
- Specialized Loan Servicing, LLC's Motion to Dismiss Complaint (ECF No. 14, "SLS Mem.")
- Plaintiff's Opposition to Specialized Loan Servicing, LLC's Reply to Opp'n to Motion to Dismiss (ECF No. 18, "Opp'n to SLS Mot.")

Compl. at 1; *see generally id*., Ex. A (ECF No. 1-1 at 17-18, Fee Simple Deed). The deed was recorded at the District of Columbia Recorder of Deeds on July 6, 2000, and assigned an instrument number, Doc. # 2000061653. *See id*., Ex. A (ECF No. 1-1 at 19).

Plaintiff obtained a mortgage loan from North American Mortgage Company in the amount of $72,419.00 for which the property is collateral. *See generally id*., Ex. C (ECF No. 1-1 at 20-29, "2000 Deed of Trust"). On June 27, 2000, plaintiff executed a Deed of Trust which also was recorded on July 6, 2000, and assigned an instrument number, Doc. # 2000061654. *See id*., Ex. C (ECF No. 1-1 at 36). The underlying note ("2000 Note") was not recorded.

Among other terms, the 2000 Deed of Trust provided:

> Borrower [plaintiff] owes Lender [North American Mortgage Company] the principal sum of [$72,419.00]. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 01, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest . . . to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, *Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the property* located in the District of Columbia [at 3328 Clay Street, N.E., Washington, DC 20019].

*Id*., Ex. C (ECF No. 1-1 at 20, 22) (emphasis added). It named Karyn T. Wilson as Trustee, *id*., Ex. C (ECF No. 1-1 at 20), and provided for the appointment of successor Trustees:

> Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

*Id*., Ex. C (ECF No. 1-1 at 27) (emphasis removed).

The 2000 Deed of Trust bears FHA Case No. 081-0665912-730, *see id.*, Ex. C (ECF No. 1-1 at 20), and presumably the Federal Housing Administration ("FHA") insured the loan. The loan had an adjustable rate, *see id.*, Ex. C (ECF No. 1-1 at 30-32, Adjustable Rate Rider), and proceeds were to be advanced for the purpose of rehabilitating the property, *see id.*, Ex. C (ECF No. 1-1 at 33-34, Rehabilitation Loan Rider).

### B. Assignment of the 2000 Deed of Trust to MERS

On September 3, 2002, Washington Mutual Bank, successor to North American Mortgage Company, assigned the 2000 Deed of Trust to Mortgage Electronic Registration Systems Inc. ("MERS"). *See id.*, Ex. H (ECF No. 1-1 at 37-38, Assignment of Deed of Trust). This transaction was recorded at the District's Recorder of Deeds on June 10, 2003, and assigned an instrument number, Doc. # 2003072029. *See id.*, Ex. H (ECF No. 1-1 at 39).

### C. Substitute Trustees

On an unspecified date, and by means not reflected in documents recorded at the District of Columbia Recorder of Deeds, Wells Fargo became the holder of the 2000 Note and 2000 Deed of Trust. Effective March 10, 2010, Wells Fargo appointed James E. Clarke and Renee Dyson as Substitute Trustees, *see id.*, Ex. B (ECF No. 1-1 at 45-46, Deed of Appointment of Substitute Trustees). The appointment was recorded at the District's Recorder of Deeds on March 31, 2010, and assigned an instrument number, Doc. # 2010028263. *See id.*, Ex. B (ECF No. 1-1 at 47). And effective June 21, 2010, Wells Fargo appointed James E. Clark the sole Substitute Trustee. *See id.*, Ex. E (ECF No. 1-1 at 40-41, Deed of Appointment of Substitute Trustees). Wells Fargo caused the appointment to be recorded on August 12, 2010, and assigned an instrument number, Doc. # 2010069708. *See id.*, Ex. E (ECF No. 1-1 at 42).

**D. Notice of Foreclosure Sale**

Plaintiff fell behind on her mortgage payments, and on August 6, 2010, Trustee Clarke issued a notice of foreclosure sale. *See id.* at 2; *see generally id.*, Ex. D (ECF No. 1-1 at 43-44, Notice of Foreclosure Sale of Real Property or Condominium Unit). At that time, the outstanding balance owed on the 2000 Note was $77,580.76, and the minimum balance required to cure the default was $10,939.18 plus attorney fees and costs. *Id.*, Ex. D (ECF No. 1-1 at 43). This notice was recorded on August 6, 2010, and assigned an instrument number, Doc. # 2010068495. *See id.*, Ex. D (ECF No. 1-1 at 44). Plaintiff has not alleged that any foreclosure proceedings took place, and has not raised a claim in this action arising from the alleged "illegal assignments of substitute trustees or the illegal notice[] of foreclosure." Opp'n to SLS Mot. at 3.

**E. Assignment of 2000 Deed of Trust to Securitized Trust**

On December 6, 2011, MERS assigned the 2000 Deed of Trust to U.S. Bank National Association, as Co-Trustee for the Government Loan Securitization Trust 2011-FV1 ("Securitized Trust"). *Id.*, Ex. I (ECF No. 1-1 at 48-49, Corporate Assignment of Deed of Trust). This assignment was recorded at the District of Columbia Recorder of Deeds at Wells Fargo's request on January 10, 2012, *see id.*, Ex. I (ECF No 1-1 at 48), and assigned an instrument number, Doc. # 2012003784, *see id.*, Ex. I (ECF No. 1-1 at 49).[2] Wells Fargo represented that, "[u]pon information and belief, the 2000 Note relating to the Plaintiff's primary mortgage loan is still held by the Securitized Trust[.]" WF Mem. at 4 n.1.

---

[2] The Corporate Assignment of Deed of Trust bore a number, MERS # 10000541000001557272, *see* Compl., Ex. I (ECF No. 1-1 at 48), which appears to correspond to the number, MIN 1000054100001557272, on the Assignment of Deed of Trust, *see id.*, Ex. H (ECF No. 1-1 at 37).

**F. Loan Modification**

In 2014, plaintiff secured a loan modification, presumably through a program sponsored by the U.S. Department of Housing and Urban Development ("HUD"). *See* Compl. at 3. She entered into an agreement which in part provided:

> This Loan Modification Agreement ("Agreement"), made this 25TH day of MARCH, 2014 between TANYA J PACE, SOLE OWNER ("Borrower") . . . and WELLS FARGO BANK, N.A. ("Lender") . . . amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated JUNE 27, 2000 and recorded . . . in INSTRUMENT NO. 2000061654 . . . and the Note, in the original principal amount of U.S. $72,419.00, bearing the same date of the Security Instrument, which covers the real . . . property . . . located at 3328 CLAY ST NE, WASHINGTON, DISTRICT OF COLUMBIA 20019[.]
>
> As of, May 1, 2014 the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is $72,511.85, consisting of the amount(s) loaned to Borrower by Lender, plus capitalized interest in the amount of U.S. $0.00 and other amounts capitalized, which is limited to escrows and any legal fees and related foreclosure costs that may have been accrued for work completed. This Unpaid Principal Balance has been reduced by the contemporaneous HUD Partial Claim amount of $6,730.65. This agreement is conditioned on the proper execution and recording of this HUD Partial Claim.

WF Mem., Ex. 1 ("Loan Modification Agreement (Deed of Trust)") at 1 (emphasis removed). By its terms, plaintiff borrowed $72,511.85 from Wells Fargo and agrees to repay the loan in monthly installments at a fixed yearly rate beginning June 1, 2014, until the loan's maturity on May 1, 2044. *Id.*, Ex. 1 at 1-2 ¶ 3.

In addition, plaintiff executed a note promising to repay HUD the principal sum of $23,772.75 beginning May 1, 2044. *See* Compl., Ex. J (ECF No. 1-1 at 51-53, "Partial Claims Promissory Note"). The Partial Claims Promissory Note in part provided:

> 2. BORROWER'S PROMISE TO PAY
>
> In return for a loan received from Lender [HUD], Borrower [plaintiff] promises to pay the principal sum of TWENTY-THREE THOUSAND SEVEN HUNDRED SEVENTY-TWO DOLLARS AND 75 CENTS (U.S. $23,772.75) to the order of Lender. Due and payable upon one of the following events below:
>
> 3. MANNER OF PAYMENT
>
> (A) Time.
> On May 1, 2044 or, if earlier, when the first of the following events occurs:
>> (i) The Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by [HUD], or
>> (ii) The maturity date of the primary Note has been accelerated, or
>> (iii) The Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by [HUD], or
>> (iv) The property is not occupied by the purchaser as his or her principal residence.
>
> (B) Place.
> Payment shall be made at . . . any . . . place as Lender may designate in writing by notice to Borrower.

*Id*., Ex. J (ECF No. 1-1 at 51) (emphasis removed). HUD later endorsed the Partial Claims Promissory Note to Wells Fargo. *See* Compl., Ex. J (ECF No. 1-1 at 53); WF Mem. at 5 (noting that endorsement stamp on Partial Claims Promissory Note "reflects its subsequent assignment from [HUD] to Wells Fargo" (emphasis removed)). The accompanying deed of trust, which identified HUD as both lender and beneficiary, in part provided:

> THIS SUBORDINATE DEED OF TRUST ("Security Instrument") is effective MARCH 25, 2014 among the Grantor, TANYA J. PACE, SOLE OWNER (herein "borrower") . . . . The trustee is NORTH AMERICAN MORTGAGE COMPANY ("Trustee") . . . . The beneficiary is Secretary of Housing and Urban Development (herein "Lender"). Borrower, in consideration for the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the . . . property located at . . . 3328 CLAY ST NE, WASHINGTON, DISTRICT OF COLUMBIA 20019 . . . . To secure to Lender the repayment of the

6

> indebtedness evidenced by Borrower's note dated MARCH 25, 2014 . . . (herein "Note"), in the principal sum of [$23,772.75], with the balance of the indebtedness, if not sooner paid, due and payable on MAY 1, 2044[.]

WF Mem., Ex. 2 ("Subordinate Deed of Trust") at 1-2 (emphasis removed). Both the Partial Claims Promissory Note and Subordinate Deed of Trust bear FHA Case No. 730 081-0665912, the same case number appearing on the 2000 Deed of Trust. The Loan Modification Agreement (Deed of Trust) does not bear an FHA case number.

Forms were prepared for the purpose of recording the loan modification documents. *See* WF Mot., Ex. 1 (ECF No. 7-1 at 7-12, Real Property Recordation and Transfer Tax Form FP 7/C). However, an error prevented their final recordation, and in May 2015 Wells Fargo sent plaintiff corrected documents with instructions to return them bearing her notarized signature. *See* Opp'n to WF Mot., Ex. A (Letter to plaintiff from Home Preservation Settlement Team, Wells Fargo Home Mortgage, dated May 1, 2015). "Plaintiff never responded to Wells Fargo's request to send new corrected, signed, dated and notarized documents." *Id*. at 10-11. Neither the Loan Modification Agreement (Deed of Trust), Partial Claims Promissory Note, nor Subordinate Deed of Trust has been recorded at the District of Columbia Recorder of Deeds.

### G. Servicing of Plaintiff's Primary and Secondary Mortgages

Plaintiff now has two mortgage accounts with Wells Fargo: one for her primary mortgage (Loan No. 8480888703), *see* Opp'n to SLS Mot., Ex. C, and another for a secondary mortgage (Loan No. 0530896562), *see id*., Ex. B at 1; Compl. at 3-4. Initially Wells Fargo serviced plaintiff's primary mortgage loan, and since transferring this function to SLS in March 2019, *see* Compl. at 3; WF Mem. at 4 n.1, SLS now services both the primary and secondary mortgages, *see* Opp'n to SLS Mot., Ex. B (Letter to plaintiff from Wells Fargo Home Mortgage dated February 11, 2016) at 1; *see id*., Ex. E (Letter to plaintiff from SLS dated October 31, 2019) at 1.

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(6)

Wells Fargo and SLS move to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. *See generally* WF Mem. at 8-13; SLS Mem. at 7.

A motion under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The Court applies a less stringent standard to a complaint drafted by a *pro se* plaintiff than it would apply to a complaint drafted by a lawyer. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

A complaint survives a Rule 12(b)(6) motion if it states a plausible claim, that is, "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545-46 (2007). A claim "crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (alteration omitted) (quoting *Iqbal*, 556 U.S. at 678). The Court must "treat the complaint's factual allegations as true and must grant the plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017). But the Court neither "accept[s] as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor accepts "inferences drawn by

plaintiff[] if such inferences are unsupported by the facts set out in the complaint," *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

On a Rule 12(b)(6) motion, the Court considers only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (alteration in original; internal quotation omitted). However, the Court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citations and internal quotation marks omitted). Therefore, "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217–18 (D.D.C. 2012) (citations and internal quotation marks omitted). The document need not even "be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Id*. at 218 (citation omitted); *see also Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 144–45 (D.D.C. 2012) (considering "documents, such as those attached to plaintiff's opposition," without converting motion into one for summary judgment), *aff'd*, 483 F. App'x 576 (D.C. Cir. 2012).

Here, plaintiff seeks to quiet title to a property encumbered by a mortgage and directly challenges the fact and validity of the mortgage's modification. Wells Fargo's exhibits – Loan Modification Agreement (Deed of Trust), Partial Claims Promissory Note, and Subordinate Deed of Trust – are integral to plaintiff's claims. Because these materials are not "outside the pleadings," Fed. R. Civ. P. 12(d), the Court considers them without converting Wells Fargo's

motion to dismiss under Rule 12(b)(6) into a summary judgment motion under Rule 56, *see Hinton*, 624 F. Supp. 2d at 46.

### B. Wells Fargo's Interest in the Property

#### 1. Recorded Instruments

Plaintiff relies on the existence of documents recorded at the District of Columbia Recorder of Deeds to support her claim of interest in and ownership of the property, and the absence of recorded documents as a basis for declaring all of her mortgages void.

#### a. Holder of the 2000 Note

Of the eight documents regarding the property recorded since June 2000, plaintiff claims that only three are legitimate: Fee Simple Deed, the 2000 Deed of Trust, and the Assignment of Deed of Trust to MERS. *See* Compl. at 5; *see also id*., Ex. G. Three other documents (two Deeds of Appointment of Successor Trustees and Notice of Foreclosure Sale of Real Property or Condominium Unit) identify Wells Fargo as the holder of the 2000 Note, and a fourth (Corporate Assignment of Deed of Trust) was filed at Wells Fargo's request.[3] According to plaintiff, no recorded documents mark the steps by which the original holder of the 2000 Note and 2000 Deed of Trust transferred or assigned its interest in the property to Wells Fargo. *See, e.g.,* Opp'n to WF Mot. at 16 ("No Conveyance of the Plaintiff's Deed of Trust was 'ever' transferred from North American Mortgage Company to Wells Fargo"), 22 ("Wells Fargo presented no . . . documents . . . that transferred ownership of the Plaintiff's Deed of Trust to the Defendant.").

Plaintiff alleges that she "was led to believe Wells Fargo was holding the Note to her mortgage" and, accordingly, she made loan payments to Wells Fargo, only to learn in March

---

[3] The eighth document "is a water bill lien release that was the previous property owner's debt." Compl. at 5. It is not relevant here.

2019 that Wells Fargo merely had serviced the loan. Compl. at 3. Because Wells Fargo does not hold the 2000 Note, plaintiff contends that it neither may collect mortgage payments itself nor may delegate collection duties to SLS. *See, e.g.*, Opp'n to WF Mot. at 11 (asserting that plaintiff "has been paying on a note that does not exist"); Opp'n to SLS Mot. at 5 ("There has been no . . . entity entitled to enforcement of the Plaintiff's primary mortgage Note, since '2003.'"); Compl. at 4 (alleging SLS "is not representing the current owner of the loan but instead is seeking to represent Wells Fargo's illegal mortgage scams.").

### b. "Bifurcation" Upon Assignment of Deed of Trust to MERS

Plaintiff alleges that the 2000 "Note was separated from the lender in 2003," Compl. at 5, such that the Assignment of Deed of Trust to MERS in 2003 effected assignment of the 2000 Deed of Trust but not the underlying 2000 Note, *see* Opp'n to WF Mot. at 17-18; Opp'n to SLS Mot. at 5-6 (alleging that "no ownership has been established for the Note" and that her "mortgage was never assigned to MERS"). As a result, she claims that both the 2000 Note and 2000 Deed of Trust are void, and since 2003, "no . . . entity [has been] entitled to enforcement of [her] primary mortgage Note." Opp'n to SLS Mot. at 5. And if the assignment of the 2000 Deed of Trust to MERS in 2002 was invalid, the Corporate Assignment of Deed of Trust in 2012 is invalid also. *See* Compl. at 5. Still, Wells Fargo "made several attempts to falsely claim ownership of the bifurcated/nullified Note," Compl. at 5, and along with SLS, Wells Fargo is collecting loan payments.

### c. Loan Modification Documents

Notwithstanding plaintiff's acknowledgement that her original mortgage was modified in 2014, *see, e.g.*, Compl. at 3, she contends that the "loan modification . . . never took place," Opp'n SLS Mot. at 3. Plaintiff asserts that Wells Fargo submitted to HUD "invalid paper work,"

Compl. at 6, referring to the Loan Modification Agreement (Deed of Trust), the Partial Claims Promissory Note, and the Subordinate Deed of Trust, which allegedly did not conform to "the policies, procedures or requirements . . . the agreement was conditioned upon," Opp'n to WF Mot. at 6; *see id*. at 17 (alleging that "Wells Fargo never met HUD/FHA requirements for a Partial Claims Promissory Note"). Plaintiff refers to 24 C.F.R. § 203.371 and certain FHA-issued Mortgagee Letters, *see* Opp'n to WF Mot. at 2, 5, which, among other criteria, require timely recordation of loan modification documents.[4] Plaintiff also appears to rely on a provision of the Loan Modification Agreement (Deed of Trust) which made the modification "conditioned on the proper execution and recording of this HUD Partial Claim." WF Mem., Ex. 1 at 1. Because "Wells Fargo failed to provide evidence that [it] submitted the Loan Modification Agreement (Deed of Trust) [and the] Partial Claims Promissory Note to be recorded," Opp'n to WF Mot. at 5-6, plaintiff claims that "the agreement was nullified," *id*. at 6. Consequently, she claims to have "been paying on a Note that does not exist[]." *Id*. at 11.

Plaintiff is under the impression that assignments of security instruments related to real property are valid and enforceable only if they are recorded. To the contrary, under District of

---

[4] In relevant part, 24 C.F.R. § 203.371 provides:

> Along with the prescribed application for partial claim insurance benefits, the mortgagee shall provide HUD with the original credit instrument no later than 60 days after execution. The mortgagee shall provide HUD with the original security instrument, required by paragraph (c) of this section, no later than 6 months following the date of execution. If the mortgagee experiences a delay from the recording authority, it may request an extension of time, in writing, from HUD. If the mortgagee does not provide the original of the note and security instrument within the prescribed deadlines, the mortgagee shall be required to reimburse the amount of the claim paid, including the incentive.

24 C.F.R. § 203.371(d). This regulation and other materials to which plaintiff refers, *see* Opp'n to WF Mot. at 2, 5, such as Mortgagee Letter 2013-19, Partial Claim Documentation and Delivery Requirements (May 31, 2013), contemplate recordation of loan documents.

Columbia law, the assignment of a deed or deed of trust is valid even if the assignee does not record the assignment at the Recorder of Deeds. *See Jessup v. Progressive Funding*, 35 F. Supp. 3d 25, 35 (D.D.C. 2014); *Robinson v. Deutsche Bank Nat'l Trust Co.*, 932 F. Supp. 2d 95, 104 (D.D.C. 2013) (citing cases). The District of Columbia Court of Appeals instructs:

> Generally speaking, the recordation process is designed to protect a property interest against subsequent bona fide purchasers, the risk a property holder takes by failure to record . . . . It is not generally intended to otherwise affect property rights, which include the right of holders to foreclose on security interests.

*Rose v. Wells Fargo Bank, N.A.*, 73 A.3d 1047, 1052 (D.C. 2013) (citations omitted). In short, "a failure to record an assignment does not give rise to a cause of action." *Diaby v. Bierman*, 795 F. Supp. 2d 108, 112 (D.D.C. 2011).

MERS has been described as follows:

> [A]n entity that tracks ownership interests in residential mortgages in an electronic database [the members of which] pay a subscription fee for the processing and transfer of mortgages. Mortgages on which MERS is named as a beneficiary may be freely transferred among MERS members and the transfers are recorded in MERS electronic database but are not publically recorded.

*McNeil v. Bank of Am., N.A.*, No. 13-CV-2162, 2014 WL 1831115, at *4–5 (D. Md. May 7, 2014) (quoting *Suss v. JP Morgan Chase Bank, N.A.*, No. 09-CV-1627, 2010 WL 2733097, at *1 (D. Md. July 9, 2010) (emphasis removed).

An assignment to MERS does not "bifurcate" or otherwise separate a deed of trust from the underlying note in such a way that either instrument is unenforceable. *See Nolan v. Shulman, Rogers, Gandal, Pordy & Ecker, P.A.*, 270 F. Supp. 3d 167, 174 (D.D.C. 2017) (rejecting argument that transfer of note "caused the note to 'split' or become 'separated' from the deed of trust, thereby making the note unenforceable"); *Fontaine v. JPMorgan Chase Bank, N.A.*, 42 F. Supp. 3d 102, 110 (D.D.C. 2014) (rejecting as "specious" the argument that, when the initial

13

holder of the Note securitized it, that act separated the Note from the Deed of Trust in a manner that somehow altered the property interest"); *Peay v. Mortg. Elec. Mers Registration Sys., Inc.*, No. 1:12-CV-0145, 2012 WL 12888857, at *3 (N.D. Ga. July 12, 2012) (concluding that "allegations about the separation of the note and the Security Deed do not state a claim for relief" because "separation of the note and security deed does not render either instrument void"), *aff'd sub nom. Peay v. Mortg. Elec.*, 514 F. App'x 896 (11th Cir. 2013).

The 2000 Deed of Trust secures repayment of the debt evidenced by the 2000 Note, and transfer of the 2000 Deed of Trust does not deprive a transferee of any right the transferor may have had to enforce its terms. *See Duffy v. Bank of Am., N.A.*, 13 F. Supp. 3d 57, 61 (D.D.C. 2014); D.C. Code § 28:3-203(b) (providing that transfer of an instrument such as a Deed of "vests in the transferee any right of the transferor to enforce the instrument"). The absence of a paper trail at the Recorder of Deeds simply does not prove that Wells Fargo has not acquired an enforceable interest in the property. *Cf. Fontaine*, 42 F. Supp. 3d at 109 (argument "that the law requires one who claims to be a mortgage holder to take physical possession of the mortgage note and to produce the Note in order to prove his interest in the property" fails as a matter of law).

**C. Fraud**

"A plaintiff claiming fraud under D.C. law must prove the existence of (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 122 (D.D.C. 2013) (citations and internal quotation marks omitted), *aff'd in part sub nom. Henok v. JPMorgan Chase Bank, N.A.*, No. 13-7036, 2013 WL 4711675 (D.C. Cir. Aug. 2, 2013). Under Federal Rule of Civil Procedure 9, a party

"alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Accordingly, a plaintiff must allege "with particularity matters such as the time, place and content of the false misrepresentations, the misrepresented fact and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 275–76 (D.D.C. 2011) (citations omitted).

### 1. Recorded Documents

According to plaintiff, Wells Fargo engaged in fraudulent activity by misrepresenting itself as the holder of the 2000 Note and beneficiary of the 2000 Deed of Trust, *see, e.g.*, Compl. at 2, and by filing fraudulent documents at the Recorder of Deeds, *see id.*; Opp'n to WF Mot. at 16-17. SLS, too, misrepresented itself as the holder of the 2000 Note, *see* Opp'n to SLS Mot. at 6-7, and unlawfully is "collecting on a debt nullified in 2015," *id*. at 10, on behalf of Wells Fargo which itself allegedly "is a fraud," *id*. at 13. As discussed above, an instrument need not be recorded in order to be valid. Plaintiff cannot rely on conclusory allegations and an absence of recorded instruments to, essentially, relieve herself of any and all obligation to repay her mortgage debt.

Furthermore, it is not plausible that plaintiff could have or would have taken any action in reliance on Wells Fargo's allegedly fraudulent misrepresentation in recorded documents of its interest in the property. The instruments to which plaintiff refers were recorded in 2010 and 2012, and plaintiff did not learn of their existence until March 2019, *see* Opp'n to SLS Mot. at 2, upon receipt of notice that SLS became the loan servicer, and years after modification of her original mortgage loan.

### 2. Loan Modification

Plaintiff alleges she "was . . . led to believe her mortgage had been modified by Wells Fargo," Compl. at 3, and instead Wells Fargo "defrauded her of [$] 23,772.75," Opp'n to WF Mot. at 9. She claims that the "loan modification . . . never took place." Opp'n to SLS Mot. at 3.

According to plaintiff, Wells Fargo accepted $23,772.75 from HUD and failed to credit these funds directly to the outstanding balance of her mortgage loan. *See* Compl. at 2-3. If Wells Fargo had deducted $23,772.75 from $72,511.85, the principal balance of what became her post-modification primary mortgage loan, the amount of her indebtedness would have been reduced to $48,739.10. *See* Opp'n to WF Mot. at 4. Instead, Wells Fargo has claimed that plaintiff owes $23,772.75 in addition to $66,234.07, the then-outstanding balance of her original mortgage loan, such that her indebtedness increased to $90,006.82. *See id*. Now plaintiff has "a second mortgage account," Compl. at 3, even though she "never applied for or took out a second mortgage with Wells Fargo," *id*. at 4; *see* Opp'n to WF Mot. at 8. The terms of the loan modification do not call for the application of funds as plaintiff describes.

The Loan Modification Agreement (Deed of Trust) clearly states that it amends and supplements the 2000 Deed of Trust. By its terms, plaintiff borrowed $72,511.85 from Wells Fargo and agrees to repay Wells Fargo (or SLS, its loan servicer) in monthly installments over a 30-year term. The Partial Claims Promissory Note reflects plaintiff's promise to repay $23,772.75 borrowed from HUD, albeit on a deferred basis. This is a second mortgage representing "a segregated amount of the principal from [plaintiff's] primary mortgage and then-accrued and unpaid interest thereto," WF Mem. at 5. Missing from plaintiff's submissions are any allegations that she did not understand the loan modification documents, or that defendants misled her into believing that the modification would be a grant not a loan, or that she took any

action relying on either defendant's intentional misrepresentation of a material fact regarding the loan modification. Her complaint and additional submissions offer, at most, conclusory assertions regarding defendants' false representations, and her factual allegations fall far short of alleging with particularly the time, place and content of defendants' misrepresentations. *See Conant v. Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 113 (D.D.C. 2014) (dismissing fraud claim where "Plaintiff states with particularity the alleged fraudulent statement of Wells Fargo, but his Complaint and subsequent filings fail to specifically identify any actions he has taken in reliance on this statement and the resulting damage from this reliance"); *Tefera v. OneWest Bank, FSB*, 19 F. Supp. 3d 215, 223 (D.D.C. 2014) (concluding that plaintiff's "single conclusory reference to fraud misses the mark for notice pleading under Rule 8, let alone the heightened pleading standard required for fraud claims under Rule 9(b)").

**D. Slander of Title**

"Under D.C. law, a claim for slander of title requires three elements: '(1) the communication relating to the title was false and malicious; (2) damages resulted from the publication of the statements; and (3) if, special damages are sought, the underlying damages must be pled with specificity.'" *Kemp v. Eiland*, 139 F. Supp. 3d 329, 347 (D.D.C. 2015) (quoting *Psaromatis v. English Holdings I, LLC*, 944 A.2d 472, 488 n.20 (D.C. 2008)) (additional citations omitted); *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985) ("To state a claim, the plaintiff must allege pecuniary harm resulting from the defendant's unprivileged publication of false statements, with knowledge or reckless disregard of the falsity, concerning the plaintiff's property or product."); *see Morris v. Morris*, 110 A.3d 1273, 1274–75 (D.C. 2015) (commenting that parties "argu[ing] that they were injured by a

baseless claim of sole ownership that they knew all along to be false" are "in substance [making] a claim of slander of title, not a claim of fraud").

By recording documents appointing successor Trustees, noticing a foreclosure sale, and the Corporate Assignment of Deed of Trust, plaintiff contends, Wells Fargo slandered title. *See* Compl. at 5. In plaintiff's view, these documents falsely misrepresent Wells Fargo as the holder of the 2000 Note, *see id*. at 2, and purport to grant SLS the authority to collect mortgage payments on Wells Fargo's behalf, *see id*. at 4.

Here, plaintiff offers only conclusory assertions regarding the falsity and maliciousness of Wells Fargo's recorded documents. Her demand for damages is just that – a wholly unsupported demand for $1.5 million, *see* Opp'n to SLS Mot. at 4, with no factual allegations linking her purported loss to the communication of a false statement relating to the title of the property. "To maintain the action, slander of title, it must be charged and shown that the words are false and were malicious, and that the damage alleged naturally and reasonably resulted," *Herzog v. Kronman*, 82 F.2d 859, 860 (D.C. Cir. 1936), and plaintiff fails to do so, *see Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 151 (D.D.C. 2011) (granting summary judgment for defendants where plaintiffs "failed to allege or show how the actual *publication* of the deed—as opposed to the *execution* of the deed—caused them to suffer pecuniary harm") (emphasis in original).

**E. Quiet Title**

An action to quiet title to the property is a request for equitable relief. *See In re Tyree*, 493 A.2d 314, 317 (D.C. 1985). "In a quiet title action, the plaintiff asks the court to declare that he or she has good title to the property in question and compels any adverse claimant to prove a competing ownership claim or forever be barred from asserting it." *Kemp*, 139 F. Supp. 3d at 337-38 (quoting 65 Am. Jur. 2d Quieting Title § 1). A successful claim requires plaintiff "to

establish that she has superior title to the property." *Taylor v. Wells Fargo Bank, N.A.*, 85 F. Supp. 3d 63, 74 (D.D.C. 2015) (citing *Jessup*, 35 F. Supp. 3d at 36) (additional citation omitted).

Here, plaintiff contends that her title is clouded because Wells Fargo is asserting an interest in the property without having produced any recorded document(s) by which it rightfully acquired its interest. Missing from plaintiff's submissions is any acknowledgment of her own actions – she encumbered the property and irrevocably conveyed it to a Trustee until the debt is paid or until plaintiff otherwise fulfills the agreements she made through the 2000 Deed of Trust as amended and supplemented by the Loan Modification Agreement (Deed of Trust). Similarly, plaintiff fails to acknowledge the Partial Claims Promissory Note and Subordinate Deed of Trust reflecting her promise to pay the secondary mortgage. Plaintiff does not allege that she has satisfied her debt, without which she fails to allege that her interest is superior. *See Taylor*, 85 F. Supp. 3d at 74-75; *Jessup*, 35 F. Supp. 3d at 36; *Diaby*, 795 F. Supp. 2d at 112; *see also Bank of New York Mellon Trust Co. N.A. v. Henderson*, 107 F. Supp. 3d 41, 47 (D.D.C. 2015) (finding that "defendant's allegation that he is the owner in fee simply of the Property is directly contradicted by the Deed of Trust that he signed" conveying the Property to a Trustee "for the purpose of securing to the Lender the repayment of the Loan and performance of Borrower's covenants and agreements"), *aff'd*, 862 F.3d 29 (D.C. Cir. 2017).

### III. CONCLUSION

The Court concludes that the complaint fails to state a claim upon which relief can be granted and, therefore, defendants' motions to dismiss will be granted. An Order is issued separately.

DATE: April 2, 2020  /s/
COLLEEN KOLLAR KOTELLY
United States District Court Judge